DECISION
{¶ 1} Relator, Elsie G. Ward, filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order, which denied relator's application for permanent total disability compensation, and ordering the commission to find that she is entitled to that compensation.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ. R. 53(C) and Loc. R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny the requested writ. (Attached as Appendix A.) No objections to that decision have been filed.
 {¶ 3} Finding no error of law or other defect on the face of the magistrate's decision, and based upon an independent review of the evidence, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Writ of mandamus denied.
Bryant and Travis, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
 State of Ohio ex rel. Elsie G. Ward, :
 Relator, :
 v. : No. 04AP-1287
 Industrial Commission of Ohio and : (REGULAR CALENDAR)
 Tigerpoly Manufacturing, Inc., :
 Respondents. :

MAGISTRATE'S DECISION
Rendered on May 31, 2005
Portman, Foley Flint, and Christopher A. Flint, for relator.
Jim Petro, Attorney General, and Sue A. Zollinger, for respondent Industrial Commission of Ohio.
Earl, Warburton, Adams Davis, and Bruce L. Hirsch, for respondent Tigerpoly Manufacturing, Inc.
 IN MANDAMUS {¶ 4} Relator, Elsie G. Ward, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied her application for permanent total disability ("PTD") compensation and ordering the commission to find that she is entitled to that compensation.
Findings of Fact:
 {¶ 5} 1. Relator has sustained five work-related injuries during the course of her employment and her claims have been allowed as follows:
* * * [C]laim #OD206236 has been allowed for: skin sensation disturb right; carpal tunnel syndrome, right.
Claim #97-304158 has been allowed for: sprain thoracic region; sprain lumbar region; aggravation of lumbar facet arthropathy and disc disease and aggravation of thoracic arthropathy and disc disease.
Claim #OD232561 has been allowed for: sprain of wrist, left.
Claim #96-331294 has been allowed for: contusion right hand.
Claim #98-582827 has been allowed for: abrasion cornea left.
 {¶ 6} 2. Relator last worked on October 2, 2000.
 {¶ 7} 3. On November 3, 2003, relator filed her application for PTD compensation supported by the August 21, 2003 report of Dr. Christopher Holzaepfel. In his August 21, 2003 report, Dr. Holzaepfel opined that relator had reached maximum medical improvement ("MMI"), indicated that relator could not return to her former position of employment, and opined that she was permanently and totally disabled for the following reasons:
I do not feel that the patient can return to any form of employment. She is unable to sit for any prolonged period of time (more than 15 minutes) or stand for more than one half hour. I do not feel that she could, even with proper retraining, do a sedentary type of job. I do feel that she is permanently totally disabled at this time and that there is no chance for future improvement. I do not feel that further epidural injections would alter her course significantly.
 {¶ 8} 4. On relator's application for PTD compensation, relator indicated that she only completed the seventh grade in 1965 because of family hardship and has not received her GED. Relator indicated that she did not read, write, or perform basic math well. Relator's former work history included jobs as a machine operator and a chemical machine operator.
 {¶ 9} 5. Relator was also examined by Dr. Joseph E. Kearns, who issued a report dated July 8, 2004. After listing his physical findings, Dr. Kearns opined that relator had reached MMI, assessed a 15 percent impairment, and completed a physical strength rating evaluation by indicating that relator was capable of performing sedentary work.
 {¶ 10} 6. An employability assessment report was prepared by Janet Chapman, M.A., C.R.C., dated August 24, 2004. Based upon the report of Dr. Kearns, Ms. Chapman indicated that relator could immediately perform the following jobs: "Assembler, food checker, hand packager, sorter, surveillance system monitor, machine engraver." Following brief skill training or academic remediation, Ms. Chapman indicated that relator could perform the following additional jobs: "Order clerk, quality control inspector, receptionist, timekeeping clerk, service clerk." Based upon the report of Dr. Holzaepfel, Ms. Chapman indicated that relator was not employable. Ms. Chapman indicated that relator's age was not work-prohibitive but would become an increasingly negative factor in adjusting to work settings, that her educational levels may not be adequate for many entry-level sedentary jobs, that her lack of a high school diploma or GED may be a barrier to employment, and that her past work history does not provide experience for sedentary work. However, Ms. Chapman noted that there were no impediments to the development of skills required for entry-level work.
 {¶ 11} 7. Relator's application for PTD compensation was heard before a staff hearing officer ("SHO") on October 22, 2004, and resulted in an order denying the requested compensation. The SHO relied upon the report of Dr. Kearns and concluded that relator retains the residual functional capacity at a sedentary level. The SHO agreed with the vocational report of Ms. Chapman and provided his own analysis of the nonmedical factors as follows:
The Staff Hearing Officer agrees. The residual functional capacities as set forth in the above persuasive medical reports clearly would not physically prevent the injured worker from engaging in sustained remunerative employment consistent with the job titles identified by Vocational Expert Ms. Chapman as being current employment options.
The injured worker indicated at hearing that the injured worker has completed approximately the 7th grade level of education. The injured worker testified that she got B's and C's while attending school, and that she left school in order to help her mother. The Staff Hearing Officer finds that the injured worker's level of education is overall viewed as a neutral vocational factor. While her low level of education would not assist the injured worker in obtaining employment, it would not prevent her from obtaining the jobs that Vocational Expert Ms. Chapman said are current employment options. These are current jobs [sic] options that are unskilled, entry-level, that do not need additional education or retraining.
The injured worker's prior work history was identified as including the following: unskilled employment as a glue factory filler machine operator and as an auto parts manufacturer machine operator. In addition, the injured worker testified that she worked for several years as a home based babysitter. In that job she was responsible for four children ages two to seven. The injured worker's prior work history is overall viewed as being a neutral vocational asset. They do not provide transferable skills. However, the entry-level, unskilled current job options previously identified do not require any transferable skills to perform.
Based on a careful consideration of the above, as well as all of the evidence in file and at hearing, the Staff Hearing Officer concludes that the injured worker is capable of performing sustained remunerative employment consistent with the job titles identified by Vocational Expert Ms. Chapman as being current employment options. Therefore the injured worker is not permanently and totally disabled.
 {¶ 12} 8. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 13} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State exrel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 14} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 15} Relator contends that the report of Dr. Kearns does not constitute some evidence upon which the commission could rely because, while Dr. Kearns does opine that relator is capable of sedentary work, he does not explain how that conclusion is reached. However, this court has rejected this argument previously in State ex rel. Poneris v. Indus.Comm., Franklin App. No. 02AP-712, 2003-Ohio-2184. In that case, the commission relied upon the report of Dr. Lutz. In the body of his report, Dr. Lutz did not mention any of the claimant's capabilities. The only reference to the claimant's physical capabilities was on an attached form where Dr. Lutz checked a box indicating that the claimant was capable of light-duty work. In mandamus, the claimant argued that the report of Dr. Lutz was defective because Dr. Lutz did not discuss how and why his examination findings led him to conclude that claimant could perform light-duty work. Claimant also argued that the report was defective, as a matter of law, because Dr. Lutz did not give more detail about the work capacity, delineating exactly what types of jobs in the light category claimant was capable of performing. This court rejected the claimant's arguments and found that the report of Dr. Lutz was not defective and would not be excluded from evidentiary consideration. This court specifically rejected the contention that the commission has a legal duty to require its medical specialist to provide more than an opinion relative to the claimant's work category when rendering an opinion as to PTD compensation and will not exclude the physical capabilities forms.
 {¶ 16} The same reasoning is applicable here. Dr. Kearns provided his objective findings and reviewed the medical records which were available to him. He then concluded that relator had reached MMI, assessed a 15 percent whole person impairment, and concluded that relator was capable of performing sedentary work. Inasmuch as weight and credibility of the evidence are exclusively within the jurisdiction of the commission to determine, the commission was within its discretion to find the report of Dr. Kearns to be credible and to rely on it as some evidence to support the commission's conclusion that claimant could perform sedentary work.
 {¶ 17} Relator also contends that the vocational report must be discarded as the vocational expert relied upon the unsupported conclusion of Dr. Kearns. However, inasmuch as the commission may reject all vocational evidence and conduct its own analysis of nonmedical factors,State ex rel. Jackson v. Indus. Comm. (1997), 79 Ohio St.3d 266, and is free to accept one vocational report over another, id., the commission had discretion to consider and concur with the vocational report of Ms. Chapman. Furthermore, in the present case, the commission conducted its own analysis of the nonmedical disability factors and the magistrate finds that the commission's analysis for those disability factors meets the requirements of Stephenson and Noll, and finds that relator has not established that the commission abused its discretion in this regard.
 {¶ 18} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying her application for PTD compensation and this court should deny relator's request for a writ of mandamus.